**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
(Greenbelt)

| | | |
|---|---|---|
| **DAWUD J. BEST**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al.,**<br>Defendants. | ) | CIVIL ACTION NO. 17cv314-GJH<br>**JURY TRIAL DEMANDED** |

**~~CORRECTED FIRST~~ SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Dawud J. Best, sues the defendants Federal National Mortgage Association aka Fannie Mae ("FNMA"), Capital One, National Association ("Cap One") and Brock & Scott, PLLC ("B&S"), and in support thereof alleges the following:

**PRELIMINARY STATEMENT**

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), the Truth In Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 et seq. ("RESPA"), the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. ("ECOA"), the Maryland Consumer Debt Collection Act, Md. Code §14-201 ("MCDCA"), and the Maryland Consumer Protection Act, Md. Code §13-301 ("MCPA").

**JURISDCTION AND VENUE**

2. The jurisdiction of this Court arises under 15 U.S.C. § 1692k and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as Plaintiff resides in this District and the conduct complained of occurred in this District.

## PARTIES

3~~2~~. The Plaintiff is a natural person and resides in Cheverly, Maryland.

4~~3~~. FNMA is the largest purchaser of mortgage loans in the nation.

5~~4~~. B&S is a law firm specializing in the collection of mortgage debts and employs non-attorneys whose primary job function is to solicit debts for collection or make contacts with a debtor to collect payment.

6~~5~~. Cap One is a financial institution that specializes in credit cards, home loans, auto loans and banking products.

## FACTS

7~~6~~. Mr. Best owns the "Property" located at 5800 Carlyle Street in Cheverly, MD.

8~~7~~. The Property was financed via a Note that was secured by a deed of trust.

9~~8~~. Cap One claimed to have acquired the Note and claimed to be the servicer of the loan for the loan owner, Federal National Mortgage Association.

10~~9~~. In February 2016, Defendant B&S sent correspondence to Plaintiff wherein B&S claimed that Plaintiff owed a debt of $464,376.55 and that Cap One was the creditor or the loan

owner to whom the debt was owed. Plaintiff received B&S' correspondence on or about February 5, 2016. The cover letter attached to B&S' mailing instructed Plaintiff to "send correspondence to 484 Viking Drive Suite 203 Virginia Beach, VA 23152."

11~~0~~. As is relates to B&S' February 2016 correspondence Cap One *never* notified Best that it acquired the ownership of his loan.

12~~1~~. Either B&S's representation that Cap One was the loan owner was false or Cap One failed to comply with TILA, which requires a new owner of a loan to notify the debtor of the change of ownership.

13~~2~~. Also, at the time that B&S sent this correspondence, Cap One had not appointed B&S as the trustee of Plaintiff's deed of trust and therefore B&S had no rights in the deed of trust. In fact, Cap One never appointed the B&S law firm as trustee and B&S is not licensed to collect debts in Maryland and it never accrued a right to collect the debt.

14~~3~~. Despite not being the trustee and having no rights in the deed of trust, B&S represented that it could foreclose on the Property. B&S' statement that Plaintiff's loan was a "Referral for Foreclosure" and that the "**ACCOUNT HAS BEEN PLACED WITH OUR OFFICE FOR FORECLOSURE**" mislead and/or confused the Plaintiff into believing that B&S was the trustee with rights to foreclose.

15~~4~~. B&S knew that it was not the trustee and had no rights in the deed of trust, including the right to foreclose, but nevertheless B&S made the representation that it did have rights to foreclose on the Property.

16~~5~~. Mr. Best sent B&S a letter, on or about March 4, 2016, disputing the validity of the debt and/or requesting verification of the debt.

17~~6~~. B&S did not respond to Plaintiff's request for validation and verification of the debt until August 2016.

18~~7~~. Despite failing to attempt to verify and/or validate the debt for 5 months, B&S continued its foreclosure efforts during the time period immediately following Best's submission of his request for validation and verification of the debt.

19~~8~~. After receiving Mr. Best's request for verification of the debt and prior to verifying that debt, B&S filed a foreclosure action, threatened to sale the Property and served Plaintiff with the foreclosure action. All of these actions were taken during the month of March. Specifically, B&S filed the foreclosure action on March 8, 2016, mailed a letter threatening a foreclosure sale on March 11, 2016, and served the Plaintiff with the foreclosure action on March 20, 2016.

20~~19~~. Under Maryland law the *soonest* possible date that B&S could hold a foreclosure sale on the Property was May 4, 2016, which was 45 days *after* the date that Best was served with the foreclosure action on March 20, 2016.

21~~0~~. Although B&S was prohibited from collecting on the debt during the time following Best's request for verification of the debt and B&S's verification of the debt, B&S made at least three separate collection attempts on the debt during that time period.

22~~1~~. Additionally, despite having no right to conduct a foreclosure sale prior to May 4, 2016, B&S sent correspondence on or about March 11, 2016 that misrepresented that it could hold

a foreclosure sale 45 days after March 11, 2016 Here, B&S misrepresented it could foreclose as early as April 25, 2016. Importantly, this letter's threat to conduct a foreclose sale was in connection with B&S' collection of the debt through foreclose or enforcement of the security interest.

23~~2~~. B&S's misrepresentations caused Best, or would have caused the least sophisticated consumer, to be confused as to who owned his loan and further caused him to expend resources trying to discover the identity of the owner.

24~~3~~. B&S misrepresentations caused Best, or would have caused the least sophisticated consumer ("LSC"), to be confused as to when his Property could be sold at a foreclosure sale and affected Best's, or LSC, decisions and/or actions regarding the debt.

25~~4~~. Plaintiff reviewed his credit report and noticed Capital One was reporting Plaintiff's loan as delinquent.

26~~5~~. On or about July 3, 2016 Plaintiff mailed a letter to Equifax, Experian, and Trans Union in which he disputed the reported delinquency. Additionally, Plaintiff sent a letter to Cap One disputing the adverse account.

27~~6~~. In addition to disputing the delinquency, Plaintiff's letter requested of Cap One to (i) identify the owner of the loan because B&S claimed Cap One to be the owner, (ii) furnish the change of ownership as prescribed by TILA, and (iii) provide the chain of ownership of the Note along with the date the Note was indorsed in blank.

28~~7~~. The credit reporting agencies (CRAs) forwarded Plaintiff's dispute to Cap One.

29~~8~~. In or around late July and early August 2016, the CRAs concluded their investigation. However, the Cap One tradeline was not updated to reflect it was in dispute because Cap One failed to instruct the CRAs to notate the account as disputed. Notably, Cap One's reporting of derogatory information occurred within sixty-days of Plaintiff's July 3, 2016 dispute letter. Cap One responded, to Plaintiff, by providing a copy of a document entitled notice of transfer of servicing rights, a copy of the Note, and a copy of the Deed of Trust.

30~~29~~. Cap One failed to fulfill Plaintiff's request for full disclosure because it knew it was willfully furnishing inaccurate information to the CRAs.

31~~0~~. Again, in October 2016 Plaintiff obtained copies of his credit file from the CRAs. Cap One's inaccurate reporting of the delinquency was still being listed and the account was not updated to reflect it was in dispute by Plaintiff.

32~~1~~. Plaintiff forwarded disputes to the CRAs contesting the accuracy of his credit file regarding Cap One's inaccurate reporting of payment history. The CRAs forwarded Plaintiff's dispute to Cap One.

33~~2~~. In January 2017 the CRAs completed their investigation and furnished updated copies of Plaintiff's credit file. Trans Union's investigations of Plaintiff's disputes resulted in Cap One's tradeline being deleted. However, Equifax and Experian were continuing to report the Cap One account in addition to failing to note the account as disputed.

34~~3~~. Essentially, Cap One couldn't or refused to furnish the details required to satisfy the dispute which resulted in Cap One instructing Trans Union to delete its tradeline.

354. Cap One knowingly provided varying account details to the CRAs including the omissions of factual information that was presented by Plaintiff.

365. In March 2017 Plaintiff disputed the Cap One tradeline with Equifax and Experian. Plaintiff requested that a re-investigation be conducted and that he be notified of their findings. As in previous transmissions to the CRAs, Plaintiff disputed the accuracy of the payment history noted by Cap One. In response to Plaintiff's dispute, Equifax and Experian forwarded Plaintiff's dispute to Cap One.

376. Equifax and Experian concluded their investigations and forwarded their findings to Plaintiff. The Cap One tradeline was deleted from Plaintiff's Equifax and Experian credit file.

387. Cap One was unable or unwilling to provide the details needed to satisfy the dispute which resulted in Cap One instructing Equifax and Experian to delete their tradeline.

398. On December 30, 2016 Plaintiff sent a qualified written request ("QWR") to Cap One.

4039. Plaintiff's QWR requested of Cap One to identify why he never received a notice acknowledging receipt of his loss mitigation application Plaintiff submitted on December 1, 2016. Plaintiff also sought to determine why there wasn't a notification providing him the status of the application.

410. Additionally, Plaintiff's QWR informed Defendant Cap One that it was reporting an error on his account. The error related to Cap One's claim that his loan was delinquent since May 2010. Cap One was in error because it refused to accept his tendered payment in July 2010. This

refusal, by Cap One, resulted in it accessing late fees, collection fees, attorney fees, foreclosure related costs and other costs.

42~~1~~. Plaintiff's QWR made the request of Defendant Cap One to provide information so a payoff could be scheduled. This request ask of Cap One to furnish a certified copy of the Note, a payoff statement and a history of the loan transactions.

43~~2~~. Defendant Cap One responded to Plaintiff's QWR on or about March 2, 2017. Cap One failed to produce the documents that were requested by Plaintiff.

44. On November 29, 2016, Plaintiff filed for bankruptcy. Many of Plaintiff's present claims—paragraphs 10 thru 29 and 48—existed at time of his bankruptcy filing. Although those claims existed at the time of his bankruptcy filing, the claims are fully or partially exemptible and Plaintiff is seeking to have those claims exempted. In addition to Plaintiff's pre-bankruptcy filing claims, the Plaintiff is alleging violations occurring after the bankruptcy. More particularly, paragraphs 32 thru 47 and 71 thru 83 relate exclusively to Plaintiff's post-bankruptcy claims. The remaining paragraphs or allegations relate to both Plaintiff's pre-bankruptcy and post-bankruptcy claims.

**COUNT ONE: VIOLATIONS OF FDCPA**

45~~3~~. Plaintiff incorporates paragraphs 1 - 44~~2~~ by reference.

46~~4~~. Defendant B&S violated 15 U.S.C. §1692e(2),(10) during its debt collection attempts by misrepresenting it had legal rights in the deed of trust for the Plaintiff property before any individual attorneys associated with B&S was appointed as the substitute trustee, much less B&S

itself which was never appointed trustee. Additionally, B&S violated 1692e by misrepresenting it could collect a debt when it was not licensed as a collection agency in the state of Maryland.

475. Defendant B&S violated 15 U.S.C. §1692e(2),(5),(10),f(6) by misrepresenting it could schedule a foreclosure sale of the Plaintiff's property before 45 days elapsed after B&S served the mortgagor with the foreclosure order to docket. Additionally, B&S violated 1692e by (i) misrepresenting it could collect a debt when it was not licensed as a collection agency in the state of Maryland and (ii) scheduling a foreclosure sale April 27, 2017 – more than 37 days elapsed from Cap One's receipt of Plaintiff's loss mitigation application.

486. Defendant B&S violated 15 U.S.C. §1692g by failing to identify the creditor of the debt within five days of its initial communication to Plaintiff.

497. Defendant mailed a notice of trustee sale for April 27, 2017 but the Defendant did not mail the notice until April 18, 2017 which violates Md. Real Property § 7-105-2(c)(2) which constitutes a violation of 15 U.S.C. §1692 because Defendant did not satisfy the condition – provide notice within 10 days of foreclosure sale – precedent to conduct a foreclosure sale.

5048. As a result of the conduct of the Defendant, Plaintiff suffered actual damages including, pecuniary expenses, fear, anxiety, frustration, anger and other emotional distress, which led to the manifestation of physical injuries, such as headaches, vomiting, night sweats, sleeping problems, depression, stomach sickness and vision difficulty.

5149. As a result of the conduct of the Defendant, Plaintiff suffered actual damages including, pecuniary expenses and emotional distress.

52~~0~~. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the court pursuant to 15 U.S.C. §1692k(a)(1), liable for statutory damages to in an amount of $100 - $1,000 pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable costs and attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

**<u>COUNT TWO: VIOLATIONS OF MCDCA & MCPA</u>**

53~~1~~. Plaintiff incorporates paragraphs 1 - 52~~0~~ by reference.

54~~2~~. Defendant B&S violated MCDCA, §14-202(8) by claiming a right to enforce the Deed of Trust against the Plaintiff when B&S knew it was not the trustee, not licensed to collect debts, and had no rights or interest in the Deed of Trust(s).

55~~3~~. Defendant B&S violated MCDCA, §14-202(8) by threatening to send a notice of foreclosure sale when B&S knew it could not schedule a foreclosure sale of the Plaintiff's property and for scheduling a foreclosure~~ase~~ sale on April 27, 2017 – having known more than 37 days elapsed from Cap One's receipt of Plaintiff's loss mitigation application..

56~~4~~. Under the doctrine of respondeat superior Cap One and/or Fannie Mae are responsible for the acts of its agent, B&S, and is liable to the Plaintiff for B&S's illegal claims and threats in violation of MCDCA, §14-202(8) as stated immediately above in paragraphs 45 & 46.

57~~5~~. As a result of the conduct of the Defendants, Plaintiff suffered actual damages.

58~~6~~. Defendants' violations of MCDCA §14-202(8) also constitute violations of the MCPA, §13-301(14)(iii).

59~~7~~. Defendants' conduct were the proximate cause of the Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to MCDCA, §14-203 and MCPA, §13-408(a) and for attorney's fees pursuant to MCPA, §13-408(b).

**COUNT THREE: VIOLATIONS OF TILA**

60~~58~~. Plaintiff incorporates paragraphs 1 - 59~~6~~ by reference.

61~~59~~. Defendant B&S claims that Cap One acquired the ownership of Plaintiff's loan in February 2016. Additionally, on March 6, 2017, in a filing with the U.S. Bankruptcy Court B&S identified Cap One as the secured creditor of Plaintiff's loan.

62~~0~~. Defendant Cap One violated TILA, 15 U.S.C. §1641(g)(1) by failing to provide Plaintiff with notice of its acquisition of ownership.

63~~1~~. Cap One's violations caused Plaintiff to expend money sending letters to the defendants to request the information, and endured anxiety, frustration and other mental and emotional distress wondering who owns his loan.

64~~2~~. As a result of the aforesaid TILA violations, Defendant Cap One is liable for actual damages, 15 U.S.C. §1640(a)(1); statutory damages, §1640(a)(2)(A)(iv); reasonable attorney fees and litigation costs, §1640(a)(3).

**COUNT FOUR: VIOLATIONS OF FCRA**

65~~3~~. Plaintiff incorporates paragraphs 1 - 64~~2~~ by reference.

664. Defendant Cap One violated FCRA §1681s-2(b)(1)(C) & (D) when it reported varying information to the credit bureaus regarding Plaintiff's dispute.

675. Defendant Cap One violated FCRA §1681s-2(b)(1)(D) & (E) for its failure to modify or delete the disputed account following the conclusion of a reasonable investigation.

686. Defendant Cap One violated FCRA §1681s-2(b)(1)(A)-(D) for its failure to make proper notations of Plaintiff's ongoing dispute and failure to report Plaintiff's mitigating factors – attempted to tender payment but Cap One refused on the basis of demanding more than was due on the loan – for not submitting payments.

697. Defendant Cap One's violations caused Plaintiff to endure emotional distress which brought about severe headaches, uncontrollable vomiting, depression, muscle spasms, stomach pains, night sweats, and blurred vision.

7068. Plaintiff seeks actual damages for Defendant's violations of 15 U.S.C. §1681(n) & §1681(o). Plaintiff also seeks statutory damages for each violation of the FCRA to include litigation costs.

**COUNT FIVE: VIOLATIONS OF ECOA**

7169. Plaintiff incorporates paragraphs 1 - 7068 by reference.

720. Plaintiff is an "applicant" as defined by 15 U.S.C. §1691 a(b).

731. Defendants are "creditors" as defined by 15 U.S.C. §1691 a(e).

742. Plaintiff's loss mitigation application is request for "credit" under 15 U.S.C. §1691 a(d).

753. Plaintiff submitted a completed loss mitigation application on December 1, 2106 and March 10, 2017.

764. Under 15 U.S.C. §1691(d)(1) a creditor is required to notify an applicant of the action(s) it has taken on a completed credit application within thirty days after its receipt of such application.

775. Defendants failed to comply with federal and state laws requiring them to provide a determination regarding Plaintiff's application for credit; contrarily, Defendants scheduled a foreclosure sale for April 27, 2017.

786. Specifically, B&S served a notice of trustee sale to Plaintiff on or about April 20, 2017. Defendant B&S mailed the notice of trustee sale to Plaintiff on April 18, 2017.

797. Plaintiff never received any communication from Defendants stating his March 2017 application was denied, closed, or that some adverse action (i.e. foreclosure sale) was underway.

8078. Defendants knowingly and/or willfully violated the dictates of ECOA, 15 U.S.C. §1691 a(d).

8179. Defendants failure to notify Plaintiff of the actions taken in regard to his application – within thirty days after its receipt of his completed application – is a violation of 15 U.S.C. §1691 (d)1 and 12 C.F.R. §202.9(a)(1)(i).

82~~0~~. Defendants violations have caused Plaintiff to suffer actual damages including emotional distress, shame, fear, anger, frustration, and mental anguish.

83~~1~~. As a result of the aforesaid ECOA violations, Defendants are liable for actual damages, 15 U.S.C. §1691(e)(a), punitive damages pursuant to 15 U.S.C. §1691(e)(b), to include costs and attorney fees pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

## COUNT SIX: VIOLATIONS OF RESPA

84~~2~~. Plaintiff incorporates paragraphs 1-83~~1~~ by reference.

85~~3~~. Plaintiff sent letters to Defendant Cap One which is defined as a qualified written request ("QWR") under 12 U.S.C. §2605(e)(1)(B). Plaintiff's QWR was a typed letter and wasn't accompanied by any other documentation – it was sent by itself. Plaintiff's QWR letter clearly listed his name, the account number, any existing dispute(s), and noted his requests for information and/or documentation.

86~~4~~. Defendant Cap One failed to notice the Plaintiff of its receipt of his QWR as prescribed by 12 U.S.C. §2605(e)(1)(A) – which is a violation.

87~~5~~. Defendant Cap One violated 12 U.S.C. §2605(e)(2)(A) thru (C) when it failed to perform a reasonable investigation into the claims, inquiries and disputes contained within Plaintiff's QWR letter. Defendant Cap One was to take suitable action within thirty days of its receipt of Plaintiff's QWR, but it failed to do so.

88~~6~~. Defendant Cap One violated 12 U.S.C. §2605(f) when it failed to notify Plaintiff, in writing, after five (5) days of being in receipt of his loss mitigation application.

897. Defendant Cap One violated 12 U.S.C. §2605(f) when it scheduled a foreclosure sale while Plaintiff's loss mitigation application was pending. More than 37 days after its receipt of Plaintiff's loss mitigation application Cap One scheduled a foreclosure sale.

9088. Defendant Cap One violated 12 U.S.C. §2605(e)(3) when it provided information to the CRAs within sixty (60) days of receiving Plaintiff's qualified written requests.

891. Plaintiff suffered actual damages which include emotional and mental distress which were caused by actions and idleness of Defendant Cap One.

920. The conduct of Defendant Cap One is the proximate cause of the injuries suffered by Plaintiff. For its actions, Cap One is liable for actual damages pursuant to 12 U.S.C. §2605(f)(1)(A), statutory damages pursuant to 12 U.S.C. §2605(f)(1)(B), and attorney's fees.

## JURY DEMAND

931. Mr. Best demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in his favor in the amount of $100,000 in actual damages from all Defendants; $4,000 in statutory damages; punitive damages; costs for litigating this action; and Plaintiff reserves the right to request legal fees in the event he retains an attorney.

Respectfully submitted,

Dawud J. Best
5800 Carlyle Street
Cheverly, Maryland 20785
Telephone: (202) 425-8163

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on or about October~~May~~ 12, 2017 a true copy of the foregoing was mailed to the Defendants.

By ____________
Dawud J. Best